Charles Haraszewicz, alias, etc., Plaintiff in Error, v. Armour & Company, Defendant in Error.

Gen. No. 14,284.

1. PRACTICE—*what question raised by motion for peremptory instruction.* Upon a motion for a peremptory instruction the .real question is not whether a new trial will have to be granted or not but whether there is *any* evidence on the part of the plaintiff tending to support each and every material allegation of the declaration.

2. MASTER AND SERVANT—*obligation with respect to machinery.* The law does not say that a master is required to furnish reasonably safe machinery and appliances but limits his obligation to the exercise of reasonable care to provide reasonably safe appliances.

3. MASTER AND SERVANT—*who fellow-servants. Held,* under the evidence that a general helper and a servant who cut, spliced and replaced a belt on a pulley were fellow-servants.

4. NEGLIGENCE—*arrangement of pulleys. Held,* in this case, that in the absence of any evidence that the arrangement of pulleys on a shaft was unusual or out of the ordinary structure and adjustment of such .appliances, the jury would not have been at liberty to infer that the master was guilty of negligence or could have reasonably anticipated and been held obliged to guard against the accident in question.

Action in case for personal injuries. Error to the Municipal Court of Chicago; the Hon. EDWARD A. DICKER, Judge, presiding. Heard in this court at the March term, 1908. Affirmed. Opinion filed March 4, 1909.

Statement by the Court. This is a writ of error to the Municipal Court of Chicago, whereby it is sought to reverse a judgment of *nil capiat* and for

costs rendered by that court against the plaintiff, Haraszewicz, and in favor of the defendant, the corporation Armour & Co. The action, according to the bill of particulars filed in the Municipal Court was for damages laid at $1,000 "for personal injuries sustained by the plaintiff while in the employ of said defendant on, to-wit, April 14, 1906, at the Union Stock Yards, Illinois, through the negligence of the said defendant, so that plaintiff's right leg was broken at and above the ankle, and other injuries" (sustained) "internal, external, permanent and otherwise."

The evidence for the plaintiff was submitted to a jury duly called, and at its close the defendant moved for a peremptory instruction. After argument and over the plaintiff's objection, the court granted the motion and instructed the jury to find the defendant not guilty.

A verdict was returned in accordance with the instruction. The plaintiff moved to set it aside and for a new trial. The court denied these motions and entered judgment on the verdict. Objections were made and exceptions preserved by the plaintiff to these various rulings of the court unfavorable to him, and he contends that the cause should have been left by the court below to the jury on the evidence which was adduced, as, "with all the inferences proper to be drawn therefrom, it fairly tended to prove a cause of action."

CHARLES A. CHURAN and ROYAL W. IRWIN, for plaintiff in error.

A. R. URION and A. F. REICHMANN, for defendant in error.

MR. JUSTICE BROWN delivered the opinion of the court.

The contention of the plaintiff is, that this was not a case for a peremptory instruction. Counsel do not

overstate the rule in his favor. Indeed, in Woodman v. Illinois Trust and Savings Bank, 211 Ill. 578, and in other cases, the Supreme Court states it more strongly against a defendant than the appellant does in this case. It is not the law, it says, that a court may properly take a case from the jury whenever it would feel compelled to set the verdict aside if returned. The real question in every such case is not whether a new trial will have to be granted or not, but whether there is *any* evidence on the part of the plaintiff tending to support each and every material allegation of the declaration.

But, measured even by this standard, we cannot find that in this record there is any cause for reversing or criticising the action of the trial judge. To entitle the plaintiff to a recovery, it was necessary for him to prove negligence on the part of the defendant. He claims that he did so, or at least produced evidence tending to do so, in that he proved, first, that the machinery was structurally defective; and, second, that the belt which knocked the plaintiff down, as hereinafter described, ran off the pulley because it was improperly or unevenly cut or spliced or riveted together.

The injury happened in this way: The plaintiff was, on the date of the accident, April 24, 1906, in the employ of the defendant in a new cooper shop at the stock yards as a helper, laborer, and general assistant. He had been in that new shop about two weeks; before that he had been especially engaged in gluing barrels.

About three or four weeks before the accident the machinery with the accompanying shafting, pulleys and belting, had been installed by the defendant. The machines were run by electric motor power, conveyed to them by means of a main shaft about eighty feet long and two and seven-eighths inches thick, running north and south and about fourteen feet from the floor, and by a counter-shaft about four feet long, eight feet

from the main shaft and parallel thereto. The main shaft had two tight pulleys on it, one a twenty-four inch crown pulley, and one a twelve-inch crown pulley. They were three or four inches apart. The counter-shaft also had two twelve-inch crown pulleys. A crossed rubber belt six inches wide conveyed the power from the main shaft to the counter-shaft. It ran from the twenty-four inch pulley on the main shaft to the twelve-inch pulley on the counter-shaft, leaving the bottom of the pulley on the main shaft and going to the top of the pulley on the counter-shaft, and *vice versa.*

On the 24th of April, 1906, one Clarence Jones, a machinist's helper, had occasion to cut the belt and then rivet the ends together to shorten it. It was slack, and he wished to tighten it. He took it off the pulleys and cut it, and then called the plaintiff to come up on the scaffold on which he was standing and which ran from the shaft to the counter-shaft, about four feet below them. He asked the plaintiff to hold the belt while he (Jones) put in two belt hooks. The plaintiff did this. After the belt was spliced Jones slipped it over the tight pulley of the counter-shaft and the plaintiff held it there, while Jones went to the other end of the scaffold and slipped it over the twenty-four-inch pulley on the main shaft. In about three seconds the belt ran off the other side of the pulley on the main shaft. The shaft was revolving about sixty times a minute at the time. The belt got caught between the twenty-four inch pulley and the twelve-inch pulley on the main shaft, which were, as noted, not more than four inches apart. The result was that the counter-shaft was thrown down to the floor, the hangers on which it hung having been broken or torn from their fastenings. The belt then wrapped itself around the main shaft.

Exactly what happened to the plaintiff which caused the injury is not quite clear. Jones says the plaintiff jumped to the floor. The plaintiff says he

did not jump, but was knocked down to the floor by something that hit him on the foot. This, for the purposes of this inquiry, must be taken as true, and it is to be assumed therefore that he was hit by the belt or counter-shaft or hangers. His leg was broken just above the ankle joint and his foot otherwise injured. The doctor who attended him thinks his injury permanent because of the ankylosis of the ankle joint.

The structural defect in the machinery is claimed to be that the pulleys on the main shaft were but four inches apart, and the crossed belt six inches wide, so that when the belt did run off it could be jammed between the pulleys and tear the countershaft down.

But this in itself presented no question of negligence to the jury. Almost all adjustments of machinery are more or less dangerous in case of accident to the running gear.

Although the accident and injury might not have been the same, or at all events, brought about in the same way, if the arrangement of pulleys and belts had been different, such a different arrangement might and probably would have had dangers of its own not foreseen or to be anticipated.

It is in view of these considerations that the law does not say that a master is required to furnish reasonably safe machinery and appliances, but limits his obligation to exercising reasonable care to provide reasonably safe appliances. In this case we cannot see that in the absence of any evidence that the arrangement of pulleys on the shaft was unusual or out of the ordinary structure and adjustment of such appliances, the jury would have been at liberty to infer that the master was guilty of negligence or could reasonably have anticipated and been held obliged to guard against this unfortunate accident.

Still less, if possible, do we see any ground for holding that the jury were at liberty to infer from the evidence that the cause of the accident was that the belt was improperly or unevenly cut or spliced and riv-

eted together, or improperly put on the pulley by Jones.

There is no evidence of this at all. A witness called as an expert did indeed say that the belt might have run off because improperly cut or riveted, but he does not negative the possibility of an infinity of other causes. The only evidence which is material on these points is that of Jones, who, called for the plaintiff, swore that he did the job of cutting and splicing and replacing the belt on the pulley in the usual and ordinary way and as he had done it before, and that the belt had never run off before.

In addition to this, however, we can come to no other conclusion than that Jones was a fellow-servant of the plaintiff. Therefore, if there had been evidence tending to show Jones negligent, it would not have justified the jury in a verdict for the plaintiff.

The judgment of the Municipal Court is affirmed.

*Affirmed.*